# ORIGINAL

## UNITED STATES DISTRICT COURT
for the

Sealed
Public and resvi and state access
to th ...            are
prohibited by court order.

United States of America
)
v.
)
Cong Chi LE, Carry LE, Hien The NGUYEN, Minh
Thanh NGUYEN and Lam Thanh HO
)
)
)
)
)

Case No. H 13-466M

_____
Defendant(s)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ April 26, 2013 _____ in the county of _____ Harris _____ in the

_____ Southern _____ District of _____ Texas _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 & 846 | knowingly and intentionally to manufacture or distribute, or to knowingly and intentionally possess with intent to manufacture or distribute, 1,000 or more marijuana plants, and to conspire to do the same |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

S/A Mickey Teague
_____
Printed name and title

Sworn to before me and signed in my presence.

Date: 4/29/13

_____
Judge's signature

City and state: _____ Houston, Texas _____

George C. Hanks, Jr., U. S. Magistrate Judge
_____
Printed name and title

# AFFIDAVIT

I, Mickey Teague, being duly sworn, depose and state as follows:

1.     I am a Special Agent of the United States Drug Enforcement Administration within the meaning of Title 18, United States Code, § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for offenses enumerated in Title 18, United States Code, § 2516.

2.     I have been a Special Agent for the Drug Enforcement Administration (DEA) for over sixteen (16) years. I received four (4) months of training in narcotics trafficking investigations and related legal matters at the DEA Training Academy in Quantico, Virginia. I am currently assigned to the Houston Field Office, in Houston, Texas. I have participated in numerous investigations involving the illegal possession and distribution of narcotics and money laundering. I have participated in the investigation of the offenses more particularly discussed below, and reviewed reports prepared by other agents of the DEA and other law enforcement agencies.

3.     I have received courses of instruction from the United States DEA, and other law enforcement agencies, relating to investigative techniques and the conduct of narcotics and financial investigations. I have participated in and have conducted investigations which have resulted in the arrests of individuals who have smuggled, received, and distributed controlled substances, as well as the seizure of illegal drugs and proceeds derived from the sale of those illegal drugs. In addition, in connection with these and other cases, I have conducted follow-up investigations concerning the concealment of narcotics produced assets, money, bank records, etc., and the identification of co-conspirators through the use of ledgers, telephone bills and records, and photographs, as related to drug trafficking and money laundering.

4.      I have been associated with several investigations involving the interception of wire communications. I am familiar with the ways in which those engaged in the trafficking of controlled substances conduct their business, including, but not limited to, their methods of manufacturing, importing and distributing controlled substances, their use of cellular telephones, digital display paging devices, numerical codes, and code words to conduct their transactions. I am also familiar with the ways narcotics traffickers and others receiving money from narcotics traffickers collect, conceal, and launder the proceeds of their illegal drug trafficking activities, including proceeds derived from the sale and distribution of controlled substances.

5.      Based on my training, experience, and participation in controlled substance and money laundering investigations which have resulted from violation of the United States federal drug and money laundering laws, I prepared this affidavit in support of a criminal complaint charging Cong Chi LE, Carry LE, Hien The NGUYEN, Minh Thanh NGUYEN and Lam Thanh HO with violating Title 21, U.S.C. § 846, to wit, conspiracy to knowingly and intentionally possess with the intent to manufacture or distribute 1,000 or more marijuana plants.

6.      The addresses referenced in paragraph 5a and 5b above are residences utilized by Cong Chi LE, Carry LE, Hien The NGUYEN, Minh Thanh NGUYEN, Lam Thanh HO, Son Kim LE, Phi Chau LE, Sheila NGUYEN, Hai Thai LE, Dang Hai NGUYEN, Tuan Anh LE, Giang Mai Kieu PHAM and others, who are the targets of an ongoing marijuana cultivation and money laundering investigation being conducted by the Drug Enforcement Administration, in conjunction with the Harris County Sheriff's Office, the Fort Bend County Sheriff's Office, the Houston Police Department and the Texas Department of Public Safety.   A check of the records of the Harris County Appraisal District indicates that the suspected "grow Houses" identified during the course of this investigation are  suspected rental properties.  Further investigation reveals no

2

indication that the owners of said properties are involved with the drug trafficking opganization (DTO).

## BACKGROUND

7.     Since August 2011, DPS, the Drug Enforcement Administration (DEA), the Harris County Sheriff's Office (HCSO), the Fort Bend County Sheriff's Office (FBCSO) and the Houston Police Department (HPD) have been investigating a large scale domestic marijuana cultivation and distribution organization that is based in Houston, Texas and the surrounding communities. Agents have also identified Cong Chi LE as the Houston based cell head for this DTO. During the course of the investigation, Agents and officers have executed search warrants at three (3) residences affiliated with this organization (hereafter referred to as the LE DTO) and seized clandestine marijuana cultivation operations in two of them, totaling one thousand forty nine (1,049) living marijuana plants and three (3) firearms in the third location. Through the use of open database searches, subpoenaed utility records, surveillance and interviews with Cooperating Defendants (CD's), Agents have identified the ten (10) additional residences specified in this affidavit as associated with the LE DTO, eight (8) of which are believed to contain clandestine marijuana grow operations. Those addresses, which will be discussed in more detail in later paragraphs, include the following:

A) SUSPECTED "GROW HOUSES:"

     **1) 13122 Turnbridge Trail, Houston, Texas;**

     **2) 10138 Duchamp Drive, Houston, Texas;**

     **3) 13610 Somersworth Drive, Houston, Texas;**

     **4) 11527 Bellspring Drive, Houston, Texas;**

     **5) 13815 Fort Nelson Drive, Houston, Texas, and;**

     **6) 3831 Cedar Gardens, Houston, Texas.**

**7) 17115 Deaton Mill Drive, Houston, Texas**

**8) 2911 Crestbrook Bend Lane, Houston, Texas**

B) SUSPECT'S RESIDENCES/" STASH HOUSES":

**1) 11219 Carvel Lane, Houston, Texas;**

**2) 22526 Market Square Lane, Katy, Texas;**

8. I believe that the investigation shows that Cong Chi LE, Carry LE, Hien The NGUYEN, Minh Thanh NGUYEN, Lam Thanh HO, Son Kim LE, Phi Chau LE, Sheila NGUYEN, Dang Hai NGUYEN, Tuan Anh LE and others are responsible for the illicit, indoor cultivation of large quantities of marijuana.

9. During the course of the investigation, agents have subpoenaed records and conducted extensive surveillance on members of this DTO and the properties they frequently visit. Between August 2011 and April 2013, investigation has resulted in the identification of multiple properties which are suspected indoor marijuana cultivation facilities, hereinafter referred to as "grow houses." Investigation of these suspected grow houses has revealed the following common characteristics that Agents know, through training, experience, and specific knowledge of this DTO are indicative of indoor marijuana grow operations:

A) Surveillance of all of these properties indicates that the windows of the grow rooms in the residences listed below are covered from the inside, and little or no visible light that can be seen emanating from these windows at night. Based on my training and experience, it is common for indoor marijuana growers to cover the windows in their grow rooms in order to protect the "photoperiod" or amount of light the plants are subjected to. Marijuana growers keep timers on their lights to adjust the period of light required for the plants to mature. By covering the windows they are able to keep any exterior light from entering the grow rooms and altering the "photoperiod" the plants

are subjected to. Windows are also covered to prevent escape of high intensity light produced by the metal halide and high pressure sodium lights commonly used in indoor hydroponic marijuana cultivation. Windows are also covered to prevent neighbors or police from looking into the grow rooms and observing the marijuana and equipment used to grow marijuana indoors.

B) Subpoenaed power records for all of these residences shows abnormal electrical usage. Given the erratic power usage at these residences and the fact that the usage commonly does not appear to vary in a manner consistent with the seasons, investigators believe that the electrical lines at these locations are partially bypassed. I know from training, experience and specific knowledge of this DTO that it is common for clandestine marijuana cultivators to partially bypass electricity to avoid paying high utility bills and to thwart detection by law enforcement. Based on my training and experience, I know that the use of high intensity discharge lights, blowers to ventilate grow rooms, fans, and a variety of other electrical appliances required to cultivate cannabis indoors creates the need for an unusually high amount of electrical power. Based on my observations of the power records of the suspect residences as well as my observations of the power records of nearby, similar homes and my personal knowledge of the electrical consumption at my private residence, the electrical consumption at the suspect residences is consistent with the indoor cultivation of marijuana if the electricity at the residence is partially bypassed. Further, given the size of the suspect residences described in the proceeding paragraphs, I know from training, experience and conversations with other law enforcement officers that indoor grow operations in any of the suspect residences would most probably use in excess of 10,000-15,000 kilowatt hours a month if the power was not bypassed. As previously indicated, between August

2011 and April 2013 two (2) confirmed grow houses suspected to be operated by this DTO have been searched by law enforcement and electrical bypasses were found at both.

C) As indicated in the following paragraphs, there has been extensive surveillance on members of this DTO and the properties they frequently visit. Surveillance shows that the members of this DTO frequently pull their vehicles into the garages of the suspected grow houses immediately upon their arrival at the residences, even though they may not reside at the residence. I know from training and experience that marijuana cultivators commonly pull their vehicles into the garages of their grow houses to avoid law enforcement detection and to shield outside observers from seeing them unload the vast quantities of materials and equipment necessary to maintain the operation from their vehicles. I also know that marijuana cultivators park their vehicles in the garages of their grow houses to prevent outside observers from viewing them load their vehicles with harvested marijuana, and all the discarded materials and trash that grow house operations generate.

D) I also know from training and experience gained while entering and processing more than 100 clandestine marijuana grow houses that the odor generated by by marijuana plants growing indoors is extremely pungent, permeates the entire house and is immediately noticed by anyone who enters. I also know, based on the same training and experience, that residences containing marijuana grows to are modified inside to facilitate the growing operation and to have equipment, chemical nutrients and discarded plant material from previous harvests strewn about the residence. These conditions, including the odor, heat and humidity, modifications to the residence, noise generated by exhaust fans and materials strewn about inside grow houses make it

6

impossible for any person who enters and spends time in the house to be unaware of the illicit growing operation. I also know based on experience gained in conducting multiple grow house investigations similar to this one that those responsible for operating a grow house or multiple grow houses do not allow individuals not involved in the operation inside the grow house.

10. Between August 2011 and April 2013, law enforcement officials have conducted an extensive investigation into the activities surrounding the aforementioned properties. During this investigation, agents and other law enforcement officers have discovered the following:

A) SUSPECTED GROW HOUSES:

1) **13122 Turnbridge Trail, Houston, Texas**

Between September 2012 and April 2013, surveillance routinely showed Cong Chi LE, Carry LE, Hien The NGUYEN, and vehicles they are known to use to come and go from the residence in patterns that indicate custody and control of the property. Surveillance also shows that targets of this investigation routinely stay inside the house for several hours at a time, but no one appears to reside at this home.

On September 24, 2011 a 2007 green Volvo SUV registered to Carry LE was observed arriving at 13122 Turnbridge Trail and immediately pulling into the garage and parking.

On September 26, 2011 a green 2007 Volvo SUV registered to Carry LE was observed arriving at 13122 Turnbridge Trail and immediately pulling into the garage and parking.

On October 10, 2012, Cong Chi LE and Hien The NGUYEN were observed arriving at 13122 Turnbridge Trail driving a green 2007 Volvo SUV, which immediately pulled into

the garage and parked. Surveillance was terminated approximately 6 hours later with both suspects still inside the residence.

On October 11, 2012, Cong Chi LE and Cary LE were observed purchasing hydroponic grow supplies from a hydroponic supply store in Houston and taking them to 13122 Turnbridge Trail. Cong Chi LE and Carry LE were driving a green 2007 Volvo SUV, which immediately pulled into the garage and parked. Carry LE was observed sweeping leaves in the front driveway. Surveillance was terminated approximately two (2) hours later with both suspects still inside the residence.

On October 17, 2012, Cong Chi LE and Carry LE were observed arriving at 13122 Turnbridge Trail in a green 2007 Volvo, immediately pulling into the garage and parking. Cong Chi LE and Carry LE remained at the residence for approximately one hour and forty-five minutes before returning to 11219 Carvel Lane.

On October 22, 2012, Cong Chi LE was observed purchasing hydroponic supplies from a hydroponic grow supply store in Houston before traveling to 11219 Carvel Lane, where he remained for approximately three hours and thirty minutes before traveling to 13122 Turnbridge Trail in a green 2007 Volvo SUV. Cong Chi LE immediately pulled into the garage and parked upon arriving at the residence. Cong Chi LE remained at 13122 Turnbridge Trail for less than thirty (30) minutes before returning to 11219 Carvel Lane.

On November 29, 2012, Cong Chi LE was observed leaving the suspected grow house at 13610 Somersworth Drive and traveling to 13122 Turnbridge Trail in a green 2007 Volvo SUV. Cong Chi LE immediately pulled into the garage and parked upon arriving at the residence. Surveillance was terminated approximately forty-five (45) minutes later with Cong Chi LE still at the residence.

On December 12, 2012, Cong Chi LE was observed purchasing hydroponic grow supplies from a hydroponic supply store in Houston before traveling to 13122 Turnbridge Trail in a green 2007 Volvo SUV. Cong Chi LE immediately pulled into the garage and parked upon arriving at the residence. A black Toyota registered to Carry LE was observed in the driveway of the residence at this time. Surveillance was terminated approximately seven (7) hours later with both vehicles still at the residence.

On December 13, 2012, Cong Chi LE was observed leaving 11219 Carvel Lane in a green 2007 Volvo SUV and traveling to 13122 Turnbridge Trail. Cong Chi LE immediately pulled into the garage and parked upon arriving at the residence. A black Toyota registered to Carry LE was observed in the driveway of the residence at this time. Cong Chi LE left the residence approximately five and one half hours later.

On January 29, 2013, Cong Chi LE and Carry LE were observed purchasing hydroponic supplies from a hydroponic supply store in Houston and traveling to 13122 Turnbridge Trail in a green 2007 Volvo SUV. Cong Chi LE and Carry LE immediately pulled into the garage and parked upon arriving at the residence. Cong Chi LE and Carry LE remained at the residence for approximately thirty-one (31) minutes before leaving and returning to the hydroponic supply store to purchase more supplies, which were then taken to 11219 Carvel Lane.

On February 5, 2013, Cong Chi LE was observed arriving at a hydroponic supply store in a green 2007 Volvo SUV. Cong Chi LE was observed loading a large quantity of hydroponic supplies into the vehicle before departing and traveling to a nearby shopping center, where he was observed moving supplies from the Volvo into a white Ford van driven by Lam Thanh HO. Cong Chi LE then returned to 11219 Carvel Lane for approximately two and a half hours before traveling to the Home Depot located at

9

Beltway 8 and Bellaire Boulevard. Cong Chi LE was observed loading trash bags and air filters into the SUV before then traveling to 13122 Turnbridge Trail. Cong Chi LE immediately pulled into the garage and parked upon arriving at the residence. Cong Chi LE remained at 13122 Turnbridge Trail for approximately three hours and sixteen minutes before departing and returning to 11219 Carvel Lane.

On February 9, 2013, electronic surveillance placed Cong Chi LE at 13122 Turnbridge Trail for approximately one (1) hour before departing in a black Toyota Camry and traveling to 13610 Somersworth Drive.

On March 27, 2013, electronic surveillance placed Carry LE at 13122 Turnbridge Trail. Carry LE was observed bringing several bags inside the house that were removed from a green 2007 Volvo SUV. Cong LE and Carry LE were observed leaving the residence approximately three hours and nine minutes later in a blue 2013 Mini Cooper.

On March 29, 2013, electronic surveillance placed Cong Chi LE and Carry LE arriving at 13122 Turnbridge Trail in a blue 2013 Mini Cooper, then leaving in a green 2007 Volvo SUV approximately nine minutes later. The Volvo arrived back at the residence approximately thirty minutes later and Cong Chi LE and Carry LE were observed bringing a large box containing what appeared to be a fan inside. Cong Chi LE and Carry LE left the residence approximately two hours and fifteen minutes later.

On March 30, 2013, electronic surveillance shows a Blue Mini Cooper arriving at the residence at 13122 Turnbridge Trail at approximately 9:30 pm, pulling into the garage, and parking. The Blue Mini Cooper left the residence approximately one hour later. It should be noted that the only persons agents have seen driving the blue Mini Cooper during this investigation are Cong Chi LE or Carry LE.

On March 31, 2013, electronic surveillance shows a Blue Mini Cooper arriving at the residence at 13122 Turnbridge Trail at approximately 9:07 pm, pulling into the garage, and parking. The Blue Mini Cooper left the residence approximately twenty nine minutes later.

On April 1, 2013, and April 2, 2013, electronic surveillance shows a Blue Mini Cooper leaving the residence at 13122 Turnbridge Trail. The Blue Mini Cooper was not seen arriving at the residence.

On April 7, 2013, electronic surveillance shows a Blue Mini Cooper arriving at the residence located at 13122 Turnbridge Trail at approximately 8:14 pm. The Blue Mini Cooper was observed leaving the residence approximately twenty eight minutes later.

On April 8, 2013, electronic surveillance shows a Blue Mini Cooper arriving at the residence located at 13122 Turnbridge Trail at approximately 8;19 pm. The Blue Mini Cooper was observed leaving the residence approximately twenty nine minutes later.

On April 10, 2013, electronic surveillance shows a Black Toyota Camry arriving at 13122 Turnbridge Trail and parking in the driveway at approximately 10:29 pm. At approximately 10:38 the White Toyota Sienna van commonly driven by Minh Thanh NGUYEN arrived at the residence and parked behind the black car. At approximately 11:17 pm both vehicles left the residence.

On April 15, 2013, electronic surveillance shows a White Toyota Sienna van, commonly driven by Minh Thanh NGUYEN, arriving at 13122 Turnbridge Trail at approximately 7:17 pm. At approximately 7:48 pm the white van left the residence. On April 18, 2013, the white van arrive at 9:38 pm and left at approximately 10:23 pm.

On April 21, 2013, electronic surveillance showed a Black Toyota Camry arriving at 13122 Turnbridge Trail at approximately 2:18 am. The driver exited the vehicle and

entered the residence. At approximately 2:28 am a female matching the description of Carry LE loaded two bags into the truck of the vehicle before entering the vehicle and leaving the residence.

On April 24, 2013, Cong Chi LE, Carry LE, and Minh Thanh NGUYEN were observed doing yard work at 13122 Turnbridge Trail.

Surveillance as recent as April 2013 shows that vehicles Cong Chi LE, Carry LE, and Hien The NGUYEN are known to drive continue to come and go from the Turnbridge Trail residence on a regular basis. Current surveillance of this property further shows that the physical characteristics indicative of indoor cultivation facilities outlined in paragraph 9A above remain present at this residence.

Utility records show that "Carry LE" is the subscriber for electricity at the Turnbridge Trail address, and that the account was activated on April 5, 2012. These records indicate that the average power usage at this property from January 2013 through April 2013 was 1430 kilowatt hours per month. The average power usage of two randomly selected, similarly sized homes, in the direct vicinity of the Turnbridge Trail address was 1022 kilowatt hours per month. As stated in paragraph 9B above, Agents believe that the electrical power at this residence is partially bypassed. While still higher than neighboring homes of similar size, these numbers are notable for the fact that they are much lower than previous subpoenas results indicated, when power numbers were more than double neighboring houses of similar construction. This leads investigators to believe additional bypasses at the house have occurred, specifically a likely bypass of the air conditioning unit of the home.

2) **10138 Duchamp Drive, Houston, Texas**

Between October 2012 and April 2013, surveillance showed Hien The NGUYEN, Lam Thanh HO, Son Kim LE, Giang Mai Kieu PHAM and vehicles they are known to use come and go from the residence in patterns that indicate custody and control of the property. Surveillance also shows that targets of this investigation routinely stay inside the house for several hours at a time, but no one appeared to reside at this home until the past two months, at which time Lam Thanh HO appears to have taken up residence at this location. Agents have observed vehicles utilized by HO parked in the driveway during hours that indicate he now lives there.

On October 2, 2012, Hien The NGUYEN was observed arriving at 1038 Duchamp Drive in a green 2007 Volvo SUV. NGUYEN was immediately backed the vehicle into the garage and parked.

On October 8, 2012, observed Giang Mai Kieu PHAM exit the residence at 10138 Duchamp Drive carrying a small plastic shopping bag before leaving in a white Honda car. An Asian male believed to be Son Kim LE was observed leaving the residence in a gold 2005 Toyota registered to Son Kim LE approximately two (2) minutes later.

On November 19, 2012, Hien The NGUYEN was observed arriving at 10138 Duchamp Drive in a green 2007 Volvo SUV. NGUYEN entered the residence through the garage after parking in the driveway. NGUYEN returned to the vehicle approximately one hour and three minutes later, backing the Volvo into the opened garage door. After approximately forty (40) minutes NGUYEN left the residence in the Volvo and traveled to 11219 Carvel Lane.

On January 21, 2013, a gold 2005 Toyota was observed leaving 10138 Duchamp Drive occupied by two unidentified Asian males. Surveillance was attempted but unsuccessful due to the driver of the gold Toyota running a red light while traveling west

on Bellaire Boulevard. The two males returned to the residence approximately one hour and fifteen minutes later, immediately pulling into the garage and parking.

On February 4, 2013, Son Kim LE was observed arriving at 10138 Duchamp Drive in a dark colored 2013 Honda passenger car, parking in the street by the residence. Son Kim LE was observed removing boxes of trash bags and taking them inside the residence through the garage. Son Kim LE then left the residence for approximately forty-five minutes before returning and bringing several plastic shopping bags containing unknown items into the residence through the garage.

On February 11, 2013, Lam Thanh HO was observed arriving at 10138 Duchamp Drive in a white 2001 Ford van. HO parked in the driveway and took a plastic shopping bag of unknown items in through the garage.

On March 25, 2013, Lam Thanh HO was observed returning to 10138 Duchamp Drive and unloading hydroponic supplies handed to him by Cong Chi LE at a meeting at Bellaire Boulevard and Boone Road. Cong Chi LE had previously been observed purchasing hydroponic supplies from a hydroponic supply store in Houston before traveling to the meeting with HO.

On April 3, 2013, Lam Thanh HO was observed leaving 10138 Duchamp Drive in a gold 2005 Toyota car registered to Son Kim LE. HO traveled to a house located at 11123 Holworth Drive that records indicate belong to his mother.

On April 19, 2013, electronic surveillance shows Lam Thanh HO arriving at the residence at 10138 Duchamp Drive at approximately 5:07 pm with two small children. All three are seen going into the residence through the garage door before leaving at approximately 5:09 pm.

On April 22, 2013, electronic surveillance shows Lam Thanh HO exiting the residence and retrieving a jacket from the trunk of the Gold Camry at approximately 7:30 am. HO then enters the vehicle and leaves the residence, returning at approximately 8:28 am.

Surveillance as recent as April 22, 2013 shows that vehicles Hien The NGUYEN, Son Kim LE, Lam Thanh HO, and Giang Mai Kieu PHAM are known to drive continue to come and go from the Duchamp Drive residence on a regular basis. Current surveillance of this property further shows that the physical characteristics indicative of indoor cultivation facilities outlined in paragraph 9A above remain present at this residence.

Utility records show that "Minh NGUYEN" is the subscriber for electricity at the Duchamp Drive address, and that the account was activated on August 9, 2012. These records indicate that the average power usage at this property from January 2013 through April 2013 was 1614 kilowatt hours per month. The average power usage of a randomly selected, similarly sized home, in the direct vicinity of the Duchamp Drive address during the same time period was 632 kilowatt hours per month. As stated in paragraph 9B above, Agents believe that the electrical power at this residence is partially bypassed, yet the power useage is still more than double that of similar sized neighboring homes.

3) **13610 Somersworth Drive, Houston, Texas**

Between October 2012 and April 2013, surveillances shows that Minh Thanh NGUYEN and Cong Chi LE and vehicles they are known to use come and go from the residence in patterns that indicate custody and control of the property.

On October 9, 2012, Minh Thanh NGUYEN was observed in a white 2005 Toyota Sienna van purchasing hydroponic grow supplies from a hydroponic supply store in Houston. NGUYEN then traveled to 13610 Somersworth Drive, immediately pulling into

15

the garage and parking. NGUYEN left the residence approximately one hour and twenty minutes later.

On November 29, 2012, Cong Chi LE was observed at 13610 Somersworth Drive in a green 2007 Volvo SUV. Cong Chi LE left Somersworth and then traveled to the suspected grow house located at 13122 Turnbridge Trail.

On February 6, 2013, Minh Thanh NGUYEN was observed arriving at 13610 Somersworth Drive in a white 2005 Toyota Sienna van. NGUYEN immediately pulled into the garage and parked. NGUYEN left the residence approximately four hours and twenty minutes later.

On March 7, 2013, Minh Thanh NGUYEN was observed arriving at 13610 Somersworth Drive in a white 2005 Toyota Sienna van. NGUYEN immediately pulled into the garage and parked. NGUYEN exited the residence several minutes later and picked up some loose trash in the yard, which he took to a trash can near the garage. A vehicle turned around in the cul-de-sac the residence is located in, and when the lights moved towards the Somersworth residence NGUYEN stopped and remained still in front of an El Camino until the vehicle passed. NGUYEN appeared to be attempting to avoid be seen by the vehicle. After the vehicle passed NGUYEN resumed work in the yard. After approximately one hour and fifty minutes NGUYEN left the residence in the Toyota Sienna.

On March 8, 2013, electronic surveillance placed Minh Thanh NGUYEN arriving at 13610 Somersworth Drive in a white 2005 Toyota Sienna van. NGUYEN immediately pulled into the garage and parked. NGUYEN was observed exiting the residence, checking the west side of the house and weed eating the front yard before leaving the residence approximately one hour and eighteen minutes later.

On March 9, 2013, electronic surveillance placed Minh Thanh NGUYEN arriving at 13610 Somersworth Drive in a white 2005 Toyota Sienna van. NGUYEN immediately pulled into the garage and parked. NGUYEN was observed exiting the residence and checking the west side of the house two different times before leaving the residence approximately one hour and forty minutes later.

On March 10, 2013, electronic surveillance placed Minh Thanh NGUYEN was observed arriving at 13610 Somersworth Drive in a white 2005 Toyota Sienna van. NGUYEN immediately pulled into the garage and parked. NGUYEN was observed exiting the residence and picking up trash in the front yard before leaving approximately one hour and seven minutes later.

On March 11, 2013, electronic surveillance placed an unidentified Asian male was observed arriving at 13610 Somersworth Drive in a white 2005 Toyota Sienna van. The unidentified male immediately pulled into the garage and parked. The unidentified male was observed exiting the residence and picking up trash in the front yard before leaving the residence approximately fifty-eight (58) minutes later.

On March 12, 2013, electronic surveillance placed an unidentified Asian male was observed arriving at 13610 Somersworth Drive in a white 2005 Toyota Sienna van. The unidentified male immediately pulled into the garage and parked. The unidentified males were observed exiting the residence and checking the west side of the house before departing approximately one hour and eighteen minutes later.

On March, 13, 2013, electronic surveillance placed an unidentified Asian male was observed arriving at 13610 Somersworth Drive in a white 2005 Toyota Sienna van. The unidentified male immediately pulled into the garage and parked. The unidentified males was observed exiting the residence and checking the west side of the house and

putting garbage in the trash can near the garage door before departing approximately fifty-four (54) minutes later.

On March 14, 2013, electronic surveillance placed Cong Chi LE arriving at 13610 Somersworth Drive in an unidentified black Toyota Camry. Cong Chi LE parked in the driveway and entered the residence through the front door, remaining there for approximately forty-four (44) minutes before departing.

On March 15, 2013, electronic surveillance placed an unidentified Asian male was observed arriving at 13610 Somersworth Drive in a white 2005 Toyota Sienna van. The unidentified male immediately pulled into the garage and parked. The unidentified male was observed exiting the residence and checking the west side of the house before departing approximately one hour and thirty minutes later.

On March 17, 2013, electronic surveillance placed Minh Thanh NGUYEN at 13610 Somersworth Drive in an unidentified black car. NGUYEN was observed placing the garbage can out for collection before leaving the residence approximately one hour and five minutes later.

On March 18, 2013, electronic surveillance placed Minh Thanh NGUYEN at 13610 Somersworth Drive in a white 2005 Toyota Sienna van. NGUYEN was observed picking up a trash can and weed-eating the front yard. NGUYEN then went back inside the residence. NGUYEN left the residence approximately one hour and ten minutes after arriving.

On March 19, 2013, electronic surveillance placed an unidentified male at 113610 Somersworth. The unidentified male arrived in a dark colored car and parked in the driveway before entering the residence through the residence through the front door. The unidentified male exited the residence approximately forty-seven (47) minutes later

18

carrying a package consistent in size with a one to two pound vacuum sealed bag. I and other officers involved in this investigation have commonly encountered bags of this nature at marijuana grow houses and in vehicles stopped leaving marijuana grow houses. Vacuum sealed bags seem to be the concealment method of choice for Houston based marijuana grow houses cultivators.

On March 20, 2013, electronic surveillance placed Minh Thanh NGUYEN at 13610 Somersworth in a white 2005 Toyota Sienna van. The van immediately pulled into the garage and parked. NGUYEN was observed exiting the residence and taking the trash can to the curb before leaving approximately one hour and two minutes later.

On March 21, 2013, electronic surveillance placed Minh Thanh NGUYEN at 13610 Somersworth Drive in a white 2005 Toyota Sienna van. The van immediately pulled into the garage and parked. NGUYEN was observed exiting the residence retrieving the trash can from the curb.

On March 23, 2013, electronic surveillance placed a male believed to be Minh Thanh NGUYEN at 13610 Somersworth Drive in a dark colored car. NGUYEN then entered the residence through the front door. NGUYEN left the residence approximately fifty-six (56) minutes later.

On April 17,2013, electronic surveillance placed Minh Thanh NGUYEN at 13610 Somersworth Drive in a white 2005 Toyota Sienna van. The van immediately pulled into the garage and parked. Just before leaving NGUYEN was observed moving a trash can out to the curb for collection. NGUYEN remained at the residence for approximately one hour and twenty two minutes.

On April 18, 2013, electronic surveillance placed Minh Thanh NGUYEN at 13610 Somersworth Drive in a white 2005 Toyota Sienna van. NGUYEN was observed moving a

trash can from the curb back inside the garage before shutting the door. NGUYEN remained at the residence for approximately two hours and twenty two minutes.

On April 19, 2013, electronic surveillance shows a White Toyota Sienna minivan arriving at 13610 Somersworth Drive at approximately 6:10 pm. The van immediately pulled into the garage and the door was shut. At approximately 6:59 pm the garage door opened and the van left the residence.

On April 21, 2013, electronic surveillance shows a White Toyota Sienna minivan arriving at 13610 Somersworth Drive at approximately 8:30 pm. The van immediately pulled into the garage and the door was shut. At approximately 8:52 pm the garage door opened and the van left the residence.

Surveillance as recent as April 2013 shows that vehicles Minh Thanh NGUYEN and Cong Chi LE are known to drive continue to come and go from the Somersworth Drive residence on a regular basis. Current surveillance of this property further shows that the physical characteristics indicative of indoor cultivation facilities outlined in paragraph 9A above remain present at this residence.

Utility records show that "Son LE" is the subscriber for electricity at the Somersworth Drive address, and that the account was activated on June 17, 2009. These records indicate that the average power usage at this property from January 2013 through April 2013 was 1986 kilowatt hours per month. The average power usage of two randomly selected, similarly sized homes, in the direct vicinity of the Somersworth Drive address during the same time period was 970 kilowatt hours per month. As stated in paragraph 9B above, Agents believe that the electrical power at this residence is partially bypassed. While still higher than neighboring homes of similar size, these numbers are notable for the fact that they are much lower than previous subpoenas

results indicated, when power numbers were more than double neighboring houses of similar construction. This leads investigators to believe additional bypasses at the house have occurred, specifically a likely bypass of the air conditioning unit of the home.

4) **2911 Crestbrook Bend Lane, Katy, Texas**

Between March 2013 and April 16, 2013, surveillance shows that Hien The NGUYEN, Phi Chau LE, and vehicles they are known to use come and go from the residence in patterns that indicate custody and control of the property. Up until April 16, 2013, this residence was a functioning marijuana grow house, and has only ceased production due to police intervention.

On March 8, 2013, Hien The NGUYEN was observed purchasing hydroponic supplies from a hydroponic supply store in Houston. NGUYEN then left the hydroponic store in a white Honda van and traveled to an apartment complex located at Wilcrest Avenue and Spice Lane, where he met with several Asian males before departing and traveling to 2911 Crestbrook Bend Lane.

A second white Honda van, registered to Kerry GOELZER was also observed at the residence on this date. This van has been previously observed on multiple occasions at the now shut down grow house located at 19831 River Rock Drive in Katy.

On March 11, 2013, an Acura NSX was observed in the garage at 2911 Crestbrook Bend Lane. The Acura was registered to Phi Chau LE, who was previously observed at a now shut down grow house located at 19831 River Rock Drive in Katy, and at a meeting with Hien The NGUYEN on October 17, 2012. The white Honda van registered to Kerry GOELZER was also parked in the driveway of the residence.

On April 8, 2013, officers heard the air conditioning running at the Crestbrook Bend Lane address at 8:30 am on a cool morning (high 60s ambient temperature), and that the exterior and porch lights were still on at the residence.

Surveillance as recent as April, 2013 shows that that the physical characteristics indicative of indoor cultivation facilities outlined in paragraph 9A above remain present at this residence.

On April 16, 2013, the Harris County Sheriff's Office responded to the residence to assist the West I-10 Fire Department EMS personnel. EMT's had responded to the location after receiving a call for an 89 year old female possibly having seizures. EMS made entry to the residence to check to locate the female and discovered that the house had been a marijuana grow house, and the electricity in the residence had been bypassed.

On April 17, 2013, Hien The NGUYEN and Hai Thai LE were arrested for Evading arrest at 2911 Crestbrook Bend Lane after deputies came to check a possible burglary call at the residence. Phi Chau LE was encountered hiding inside the residence. Two nine millimeter pistols, an AK47 rifle, and multiple magazines and rounds of ammunition were seized at the time of the arrest.

Utility records indicate that "Nguyen Thuong" is the subscriber for electricity at the Crestbrook Bend Lane residence, and that the account was activated on December 13, 2012. These records indicate that the average power usage at this property from January 2013 through April 2013 was 779 kilowatt hours per month. The average power usage of two randomly selected, similarly sized homes, in the direct vicinity of the Crestbrook Bend Lane residence during the same time period was 813 kilowatt hours

per month. As stated in paragraph 9B above, Agents believe that the electrical power at this residence is partially bypassed.

### 5) **17115 Deaton Mill Drive, Houston, Texas**

Between March 2013 and April 17, 2013, surveillance showed that Phi Chau LE, and vehicles he is known to use come and go from the residence in patterns that indicate custody and control of the property. Up until April 17, 2013, this residence was a functioning marijuana grow house, and has only ceased production due to police intervention.

On March 8, 2013, Agents observed Phi Chau LE leave the suspected grow house at 2911 Crestbrook Bend Lane in a dark maroon Nissan minivan with grey rocker panels and travel to 17115 Deaton Mill Drive. A red Chevy S-10 pickup was parked in the driveway with registration belonging to Jennifer COGLEY. COGLEY lives at the apartments located at Wilcrest Avenue and Spice Lane, where the dark maroon van has also been observed, and COGLEY has a previous drug arrest in 2012 for Possession of Marijuana 4 oz- 5 lbs.

On March 25, 2013, the dark maroon Nissan minivan was observed at 17115 Deaton Mill Drive. No other activity was noted on that date.

Phi Chau LE has been observed on two separate occasions at the now shut down grow house located at 19831 River Rock Drive, Katy, Texas, as well as a meeting with Hien The NGUYEN on October 17, 2012.

On April 8, 2013, Agents conducting surveillance at the residence noted that no trash was put out for collection on trash day, that the exterior and front porch lights were still on at 7:31 am, and that the air conditioning unit could be heard running while the outside temperature was 63 degrees Fahrenheit. On the west side of the residence

23

an air conditioning overflow pipe was visible and the ground around it was visibly soaked, indicating that the air conditioning unit had been running all night. The Agent on scene detected the odor of marijuana while standing on the public sidewalk off of the property.

On April 17, 2013, the Harris County Fire Marshal's responded to a call at this address. Fire Marshal's officers discovered a functioning grow containing 450 live marijuana plants inside the residence. Investigators also noted that the electricity at the residence was bypassed. During the course of the investigation 450 live marijuana plants were seized.

Surveillance as recent as April, 2013 shows that the physical characteristics indicative of indoor cultivation facilities outlined in paragraph 9A above remain present at this residence.

Utility records indicate that "Tran PHU" is the subscriber for electricity at the Deaton Mill address, and that the account was activated on December 5, 2012. These records indicate that the average power usage at this property from January 2013 through April 2013 was 627 kilowatt hours per month. The average power usage of a randomly selected, similarly sized home, in the direct vicinity of the Deaton Mill residence during the same time period was 675 kilowatt hours per month. As stated in paragraph 9B above, Agents believe that the electrical power at this residence is partially bypassed.

### 6) 11527 Bellspring Drive, Houston, Texas

Between November 2012 and April 2013, surveillance showed that Hien The NGUYEN, and vehicles he is known to use come and go from the residence in patterns that indicate custody and control of the property.

On November 13, 2012, Hien The NGUYEN was observed leaving 11219 Carvel Lane in a green 2007 Volvo SUV traveling to a hydroponic supply store. NGUYEN was observed purchasing and loading hydroponic supplies into the Volvo before traveling to 4805 E Parma Drive in Rosenberg, Texas. NGUYEN later returned briefly to Carvel Lane before traveling to 11527 Bellspring Drive, remaining at the residence for approximately thirty-three (33) minutes before leaving.

On November 19, 2012, Hien The NGUYEN was observed leaving 11219 Carvel Lane in a green 2007 Volvo SUV. NGUYEN drove to 11527 Bellspring Drive, parking in the driveway of the residence. The vast majority of the interior contents of the residence had been stripped out and were left on the corner of the property nearest the street for trash collection. NGUYEN was observed assembling a wooden frame in the garage of the residence consistent in size and construction with others commonly observed in grow houses. NGUYEN left the residence after approximately thirty-five (35) minutes. NGUYEN then traveled to the suspected grow house at 10138 Duchamp Drive.

On March 7, 2013, Hien The NGUYEN and Sheila NGUYEN were observed arriving at 11527 Bellspring Drive in a white 2001 Honda Odyssey van, which was backed into the driveway. Hien The NGUYEN and Sheila NGUYEN removed several plastic shopping bags from the van and placing them in front of the closed garage door. Hien The NGUYEN then left the residence in the white Honda van. Sheila NGUYEN then walked into the residence through the front door. The garage door was opened approximately one foot off of the ground and Sheila NGUYEN was observed getting onto her hands and knees to pull the plastic shopping bags into the garage.

Approximately three minutes later a black Cadillac Escalade driven by an unidentified Asian male left the residence. The garage door was fully opened just long enough for the vehicle to exit before closing.

Surveillance as recent as March, 2013 shows that the physical characteristics indicative of indoor cultivation facilities outlined in paragraph 9A above remain present at this residence.

Utility records show that "Yen Prinh Nhi THI" is the subscriber for electricity service at the Bellspring Drive address, and that the account was activated on November 1, 2012. These records indicate that the average power usage at this property from January 2013 through April 2013 was 468 kilowatt hours per month. The average power usage of two randomly selected, similarly sized homes, in the direct vicinity of the Bellspring Drive residence during the same time period was 486 kilowatt hours per month. As stated in paragraph 9B above, Agents believe that the electrical power at this residence is partially bypassed.

7) **13815 Fort Nelson Drive, Houston, Texas**

Between January 2013 and March 2013, surveillance showed Tuan Anh LE and vehicles he is known to use come and go from the residence in patterns that indicate custody and control of the property.

On January 18, 2013, surveillance observed a green Honda Odyssey van registered to Tuan Anh LE picking up hydroponic supplies at a hydroponic supply store in Houston, Texas. Agents queried public database records and identified two additional possible addresses linked to Tuan Anh Le: 3831 Cedar Gardens Drive and 13815 Fort Nelson Drive.

On January 30, 2013, an officer detected an odor of marijuana emanating from the Fort Nelson residence while standing on the publicly accessible sidewalk off of the property.

On February 1, 2013, surveillance observed Tuan Anh LE arrive at the Fort Nelson residence in the previously mentioned green Honda Odyssey van.

On February 7, 2013, surveillance observed Tuan Anh LE arrive at the Fort Nelson residence in the previously mentioned green Honda Odyssey van.

On February 21, 2013, while conducting a grow house investigation and dismantling of a nearby grow house, two officers detected an odor of marijuana emanating from the Fort Nelson address.

On March 22, 2013, an unidentified Asian male was observed picking up hydroponic supplies at a hydroponic supply store in Houston and taking them to the Cedar Gardens residence in a black Toyota. The unidentified Asian male was observed backing into the driveway of the residence and was seen unloading the hydroponic equipment and taking it inside the residence.

On April 2, 2013, officers conducting surveillance of the Fort Nelson residence noted that no trash was placed out for collection on a regularly scheduled trash day. I know from training and experience that operators of grow houses frequently place no or very little trash out for collection, instead removing waste from the residence via their vehicles or simply storing it in the residence in order to avoid detection.

On April 26, 2013, officers conducting surveillance of the Fort Nelson residence detected a strong odor of marijuana emanating from the residence while standing off of the property on a public sidewalk.

Surveillance as recent as April 2013 shows that the physical characteristics indicative of indoor cultivation facilities outlined in paragraph 9A above remain present at this residence.

Utility records show that "Luom Ly" is the subscriber for electricity at the Fort Nelson Drive residence, and the account was activated on November 24, 2009. These records indicate that the average power usage at this property from January 2013 through April 2013 was 1206 kilowatt hours per month. The average power usage of two randomly selected, similarly sized homes, in the direct vicinity of the Fort Nelson Drive residence during the same time period was 436 kilowatt hours. As stated in paragraph 9B above, Agents believe that the electrical power at this residence is partially bypassed.

### 8) 3831 Cedar Gardens Drive, Houston, Texas

On October 21, 2012, surveillance placed the green 2007 Volvo mentioned multiple times in this affidavit at 3831 Cedar Gardens Drive. Identification of the driver was not possible at that time.

On January 18, 2013, surveillance observed a green Honda Odyssey van registered to Tuan Anh LE picking up hydroponic supplies at hydroponic supply store in Houston, Texas. Agents queried public database records and identified two additional possible addresses: 3831 Cedar Gardens Drive and 13815 Fort Nelson Drive.

On April 2, 2013 officers conducting surveillance of the Cedar Gardens residence noted that trash was placed out for collection on a regularly scheduled trash day, but that the only contents of the trash can were a few empty plastic water bottles. I know from training and experience that operators of grow houses frequently place no or very

28

little trash out for collection, instead removing waste from the residence via their vehicles or simply storing it in the residence in order to avoid detection.

Surveillance as recent as April 2013 shows that the physical characteristics indicative of indoor cultivation facilities outlined in paragraph 9A above remain present at this residence.

Utility records have identified "Tuan LE" as the subscriber for electric service at the Cedar Gardens Drive residence, and that the account was activated on October 5, 2010. These records indicate that the average power usage at this property from January 2013 through April 2013 was 739 kilowatt hours per month. The average power usage of two randomly selected, similarly sized homes, in the direct vicinity of Cedar Gardens Drive residence during the same time period was 641 kilowatt hours. As stated in paragraph 9B above, Agents believe that the electrical power at this residence is partially bypassed.

B) SUSPECT'S RESIDENCES/"STASH HOUSES":

### 1) **11219 Carvel Lane, Houston, Texas**

This is a tan brick, one story, single family residence, with light blue trim and dual garage doors. The residence is situated on the south side of Carvel Lane west of Boone Road, and the front door faces north. The front door of the residence is situated behind a white security gate. The house number "11219" is painted on the curb in front of the residence, and it is also displayed on a white mailbox at the curb in front of the residence.

Investigation reveals that this property is the main residence for Cong Chi LE and Carry LE, and other law enforcement officers have observed Hien The NGUYEN, Minh Thanh NGUYEN and others come and go from the residence in patterns that indicate custody and control, and have observed vehicles utilized by Cong Chi LE and Carry LE

parked in the driveway during hours that indicate they live there. Cong Chi LE, Carry LE, and Son Kim LE all show 11219 Carvel Lane as their home address on their Texas drivers licenses. Hien The NGUYEN showed 11219 Carvel Lane as his home address at the time of his arrest in 2011.

As previously mentioned throughout this affidavit, Cong Chi LE and Carry LE have been identified by Agents as a large scale cultivators of marijuana who operate or facilitate the operation of multiple clandestine marijuana grow houses in the greater Houston area. Based on these facts, agents believe that the utility bills, lease agreements and other documents pertinent to the leasing and/or operation of the aforementioned grow houses will be present inside the residence and vehicles located at 11219 Carvel Lane, Houston, Texas.

Based upon my training, experience and conversations with more experienced narcotics investigators, I know that the indoor cultivation of marijuana is a very complicated, time consuming and technical endeavor that requires a significant amount of planning and preparation in order to be successful. I know that persons who cultivate and distribute marijuana utilize a vast quantity of documents and written resources, such as published books and magazines concerning marijuana cultivation and sales, written and computer records concerning the cultivation of marijuana, account ledgers dealing with profits and losses associated with growing/distributing marijuana, both on paper and on electronic mediums, growth schedules, utility bills, addresses of other grow houses, construction diagrams of grow rooms, and receipts for equipment, supplies and materials. Additionally, I know that these records and documents are normally discovered during the execution of a search warrant upon the premises where

the marijuana grower resides, upon their persons, and/or within vehicles they utilize, and are of evidentiary value.

Based upon my training, experience and conversations with more experienced narcotics investigators, I know that vast quantities of materials, hydroponic growing equipment and supplies such as grow lamps, electrical ballasts/transformers, electrical fans, thermostats, potting soil, drying racks, plastic bags, watering tanks, gardening tools, and other items are necessary for the indoor cultivation of marijuana. I also know that scissors, scales, vacuum sealers, packaging materials, and other such items are used in the processing of harvested marijuana. Additionally, I know that the aforementioned materials, equipment and supplies are commonly found within the residence, vehicles, and/or upon the curtilage of the premises of marijuana cultivators and are of evidentiary value.

Surveillance of this residence shows that this property serves as a location where Cong Chi LE, Carry LE, Hien The NGUYEN, Son Kim LE, Minh Thanh NGUYEN, and other members of the DTO routinely meet directly before and immediately after visiting the suspected marijuana cultivation facilities. Agents therefore believe that the aforementioned documents and other evidence, such as tools and hydroponic growing supplies, will be present inside the residence and vehicles located at 11219 Carvel Lane, Houston, Texas.

### 2) **22526 Market Square Drive, Katy, Texas**

This is a tan brick, one story, single family home with brown trim. The residence has an attached two garage with brown doors. The residence is situated on the north side of Market Square Drive south of Braken Carter Lane, and the front door of the residence

31

faces south. The House number "22526" is affixed on the wall of the residence between the front door and the garage. A white mailbox is placed at the curb of the residence.

Investigation reveals that this property is the address of Minh Thanh NGUYEN. Agents have observed Minh Thanh NGUYEN come and go from the residence in patterns that indicate custody and control, and have observed vehicles utilized by NGUYEN parked in the driveway during hours that indicate NGUYEN lives there.

On February 22, 2013, I detected a strong odor of marijuana emanating from the residence at Market Square Drive.

Electronic surveillance indicates that Minh Thanh NGUYEN routinely leaves from 22526 Market Square to travel to the suspected grow house at 13610 Somersworth Drive. On March 6,8,9,10,17,18,20, and 21, 2013 specifically electronic surveillance shows NGUYEN to have been at Market Square immediately before and/or immediately after traveling to the suspected grow house at 13610 Somersworth Drive.

Based upon my training, experience and conversations with more experienced narcotics investigators, I know that the indoor cultivation of marijuana is a very complicated, time consuming and technical endeavor that requires a significant amount of planning and preparation in order to be successful. I know that persons who cultivate and distribute marijuana utilize a vast quantity of documents and written resources, such as published books and magazines concerning marijuana cultivation and sales, written and computer records concerning the cultivation of marijuana, account ledgers dealing with profits and losses associated with growing/distributing marijuana, both on paper and electronic medium, growth schedules, utility bills, addresses of other grow houses, construction diagrams of grow rooms, and receipts for equipment, supplies and materials. Additionally, I know that these records and documents are normally

discovered during the execution of a search warrant upon the premises where the marijuana grower resides, upon their persons, and/or within vehicles they utilize, and are of evidentiary value.

Based upon my training, experience and conversations with more experienced narcotics investigators, I know that vast quantities of materials, hydroponic growing equipment and supplies such as grow lamps, electrical ballasts/transformers, electrical fans, thermostats, potting soil, drying racks, plastic bags, watering tanks, gardening tools, and other items are necessary for the indoor cultivation of marijuana. I also know that scissors, scales, vacuum sealers, packaging materials, and other such items are used in the processing of harvested marijuana. Additionally, I know that the aforementioned materials, equipment and supplies are commonly found within the residence, vehicles, and/or upon the curtilage of the premises of marijuana cultivators and are of evidentiary value.

Surveillance of this residence shows that this property serves as a location where Minh Thanh NGUYEN and other members of the DTO routinely meet directly before and immediately after visiting the suspected marijuana cultivation facilities. Agents therefore believe that the aforementioned documents and other evidence, such as tools and hydroponic growing supplies, will be present inside the residence and vehicles located at 22526 Market Square Drive, Katy, Texas.

## CONCLUSION

11. Based on the probable cause detailed above, federal search warrants for the locations associated with LE DTO have been issued and will be executed on May 2, 2013. I believe, based upon my training and experience and the facts detailed in this affidavit that Agents will find and seize more than 1000 marijuana plants in the LE DTO "grow houses." I further believe that the

facts detailed above demonstrate that Cong Chi LE, Carry LE, Hien The NGUYEN, Minh Thanh

NGUYEN and Lam Thanh HO did conspire to knowingly and intentionally possess with the intent

to manufacture or distribute 1,000 or more marijuana plants in violation of Title 21 USC § 846.


Mickey Teague, Special Agent
Drug Enforcement Administration

SUBSCRIBED AND SWORN TO before me this _____ day of April, 2013, and I find probable
cause.

George C. Hanks, Jr.
UNITED STATES MAGISTRATE JUDGE